2025 IL App (2d) 250090-U
No. 2-25-0090
Order filed June 11, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.   25-CF-409 |
| | ) ) | Honorable |
| DAIDREON SPARKS, | ) ) | Betsy Flood and Donald Tegeler, Jr., |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2    Defendant, Daidreon Sparks, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to

these public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the charged detainable offenses. We affirm.

¶ 3                                 I. STATEMENT OF FACTS

¶ 4                                      A. Background

¶ 5     On February 22, 2025, defendant was charged by complaint with one count of manufacturing or delivering a controlled substance (more than 400 grams but less than 900 grams of cocaine) (720 ILCS 570/401(a)(2)(C) (West 2024)), a class X felony, and one count of possession of a controlled substance (more than 400 grams but less than 900 grams of cocaine) (720 ILCS 570/402(a)(2)(C) (West 2024)), a class 1 felony. The charges stemmed from a traffic stop that occurred on February 21, 2025. Count I alleged that defendant knowingly and unlawfully delivered or manufactured or possessed with the intent to deliver or manufacture more than 400 grams but less than 900 grams of a substance containing cocaine. Count II alleged that defendant knowingly and unlawfully had in his possession more than 400 grams but less than 900 grams of a substance containing cocaine.

¶ 6     Also on February 22, 2025, the State filed a verified petition to deny defendant pretrial release. In its petition, the State alleged that defendant was charged with a felony offense other than a forcible felony for which, based on the charge or defendant's criminal history, a sentence of imprisonment is required by law upon conviction and that defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community. See 725 ILCS

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

5/110-6.1(a)(1) (West 2024). The State further alleged that defendant has a high likelihood of willful flight to avoid prosecution. See 725 ILCS 5/110-6.1(a)(8) (West 2024).

¶ 7     The State attached to its petition a sworn synopsis drafted by the arresting agency in this case. The synopsis provides that at approximately 2:20 p.m. on February 21, 2025, Sergeant Weston of the Kane County Sheriff's Department was on patrol when he noticed an SUV bearing a Tennessee registration plate following a vehicle too closely. Weston attempted to catch up to the SUV, but it began changing lanes in an attempt to create distance. Weston conducted a traffic stop. Upon conducting the traffic stop, Weston noticed the front seat passenger "make a furtive movement towards" defendant, who was seated in the rear passenger seat. Weston noticed a third passenger as well. As Weston approached the SUV, he requested the occupants to roll down the rear passenger window. Once the window was rolled down, Weston smelled the odor of cocaine and raw cannabis emanating from within the vehicle. Defendant and the other two occupants provided Weston with Indiana driver's licenses. Weston asked the front passenger where they were headed. The front passenger advised that the men were going to visit the driver's son in Madison, Wisconsin for a couple of days. The driver of the vehicle provided Weston with a rental agreement for the vehicle. The rental agreement showed that the car was to be returned to Indianapolis, Indiana, the next day, which contradicted the statement made by the front passenger. While talking to the driver, Weston noticed that the driver was texting someone. Weston observed that the driver sent a message telling the recipient to "take it" and another message to "run." Weston then removed defendant from the back passenger seat of the SUV. As defendant was exiting the vehicle, Weston observed him reach towards a bag on the floorboard. At this time, the driver of the SUV retrieved his phone and called a woman. Weston heard the driver say, "Hey, I'm about to go to jail." Weston then conducted a search of the back passenger area. There, he found a gallon Ziploc bag wrapped

inside two grocery bags. Inside the Ziploc bag was a white powdery substance that later field tested positive for cocaine. Upon arrest, Weston removed from defendant's pocket approximately $1,345 in cash of different denominations. Defendant also had two cell phones. The front passenger of the vehicle did not have a cell phone. The cocaine recovered from the vehicle weighed approximately 760 grams, which Weston reported as having a street value of $76,000.

¶ 8    As additional grounds upon which the defendant should be denied pretrial release, the State listed defendant's criminal history, which included a 2015 conviction for resisting arrest, a 2018 felony of "assisting a criminal felony," a 2021 misdemeanor gun charge, a 2023 misdemeanor marijuana charge, and a 2024 felony of "possession of firearm after a felony." Defendant's criminal history was entirely from Indiana, and exact dispositions of the cases were unknown or left out of the record. Further, the State noted in its petition that defendant "is a resident of Indiana and was travelling Westbound on I-90 in a rental vehicle with Tennessee registration and other occupants stated they were headed to Wisconsin. Additionally[,] defendant was in possession of $1345.00 in cash in various denominations and has no known ties to Illinois or Kane County."

¶ 9                              B. Detention Hearing

¶ 10    On February 23, 2025, Judge Betsy Flood held a hearing on the State's petition. At that hearing, the State submitted the synopsis, defendant's criminal history, and a Public Safety Assessment (PSA) Report.

¶ 11    In argument, the State asserted that the proof is evident or the presumption great that defendant committed the charged offenses. The State noted that, while exiting the vehicle, defendant reached for the bag in the backseat. The State argued that this meant defendant was attempting to get the bag, which contained approximately 760 grams of cocaine. Defendant also had $1,345 in his pocket and was in possession of two cell phones.

¶ 12    The State next argued that defendant poses a real and present threat to the safety of any person or persons or the community and posed a risk of flight. The State referenced defendant's criminal history, noting that he "is committing criminal offenses that involve[] drugs and guns." The State asserted that based on the little information it had about the case, defendant would likely be on probation or parole for his 2024 case of possessing a firearm after a felony. It further noted that defendant had no ties to Illinois and that it was "unlikely" that defendant was allowed to travel outside of Indiana based on the 2024 case.

¶ 13    In response, defense counsel first argued that the State did not meet its burden by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged. Defense counsel asserted that the synopsis did not contain any statements by defendant. Further, defense counsel argued that there was no indication that both phones found on defendant belonged to him, and that it was not convincing that defendant had a large amount of cash in his pocket. Additionally, defense counsel contended that whether defendant was a real and present threat was questionable, as defendant did not appear to have a weapon at the time of the instant offense. Finally, defense counsel argued that defendant is not a flight risk because defendant lives in Gary, Indiana, which is a reasonable driving distance from Kane County, and defendant has the ability to drive to court dates in Kane County as needed.

¶ 14    The trial court denied defendant pretrial release. In her oral findings, Judge Flood concluded that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged. The court noted that based on the synopsis, the bag of cocaine was found in the backseat where defendant was sitting and defendant was in possession of a large amount of cash and two cell phones. Judge Flood likewise found that defendant was a real and present threat to the safety of the community. The trial court

based its finding on the fact that defendant was transporting a large quantity of cocaine across state lines and defendant had five separate criminal cases between 2015 and 2024, all from Indiana. The court noted that defendant's criminal history showed a "history or pattern of some dangerous behavior," with the most recent case involving a weapons charge. Finally, the court found that the State had proven that defendant posed a high risk of flight. Notably, defendant had no connections to Illinois and his PSA categorized defendant as a risk level of 5 on a 6 point failure to appear scale. The court therefore granted the State's petition and entered a written order summarizing its oral findings.

¶ 15                     C. Motion for Relief and Notice of Appeal

¶ 16     On February 28, 2025, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defense counsel disputed the court's findings that the State met its burden to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged, that defendant posed a real and present threat to the safety of any person or persons or the community, and that no conditions could mitigate any alleged threat. A hearing on defendant's motion was held before Judge Donald Tegeler, Jr., on March 6, 2025. At the hearing, defense counsel argued that based on the information provided in the synopsis, it was unlikely that defendant was aware that there was cocaine in the vehicle. Defense counsel asserted that the cocaine was double-bagged, and that it was unlikely that there was an odor emanating from the bag. Further, he contended that although the bag field-tested positive for cocaine, field tests can be unreliable. Finally, defense counsel argued that defendant did not pose a threat to the community and there were conditions that would ensure he would return to court if he was released pending trial.

¶ 17    Judge Tegeler denied the motion for relief. In his ruling, Judge Tegeler determined that Judge Flood was correct in finding that there was clear and convincing evidence that defendant committed the offenses charged. Further, he noted that there was additional, circumstantial, evidence that demonstrated defendant's knowledge of the cocaine. Specifically, Judge Tegeler found it noteworthy that the driver of the vehicle attempted to send a text message telling one of the occupants of the vehicle to "take it" and "run" and defendant had two phones, while the other occupant did not have a phone. Judge Tegeler also concurred in Judge Flood's finding that defendant posed a risk of harm to society and that no less restrictive conditions were available to mitigate defendant's risk of flight.

¶ 18    On March 11, 2025, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024) (providing that a party may initiate an appeal by filing a notice of appeal in the circuit court at any time prior to conviction). OSAD elected to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State filed a response in opposition to the appeal.

¶ 19                                    II. ANALYSIS

¶ 20    Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the

safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 21    The decision to detain a defendant or grant a defendant pretrial release is reviewed under either the manifest-weight-of-the-evidence standard or the *de-novo* standard. The Illinois Supreme Court recently articulated the circumstances under which each standard applies:

> "(1)[W]hen live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1 [of the Code (725 ILCS 5/110-6.1 (West 2024))], in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54.

In this case, no live testimony was presented. The parties proceeded solely by proffer and documentary evidence. Accordingly, our review of the trial court's factual findings and its

detention orders is *de novo*. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 22    At the outset, we note that defendant has forfeited those arguments that he raised in his motion for relief but abandoned in his memorandum on appeal. Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), provides, in relevant part, that "The motion for relief will serve as the argument of the appellant on appeal. *** Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Rule 604(h) further provides that "If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Where a memorandum fails to provide argument for issues contained in the motion for relief, those issues will be deemed abandoned and will not be addressed by the appellate court. *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21 ("OSAD's memorandum contained no identification of the issues from the motion for relief but clearly did not provide argument for three of the issues raised in defendant's motion for immediate release. Accordingly, we hold those issues were abandoned by appellate counsel and will not be addressed.).

¶ 23    In this case, defendant's memorandum on appeal addresses only one of the issues presented in his motion for relief: whether the State proved by clear and convincing evidence that the proof is evident or the presumption great that he committed the charged detainable offenses. Accordingly, we limit our review to this issue.

¶ 24    We find that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed a detainable offense. 725 ILCS 5/110-6.1(e)(1) (West 2024). Defendant was charged with manufacturing or delivering a controlled substance

(more than 400 grams but less than 900 grams of cocaine) (720 ILCS 570/401(a)(2)(C) (West 2024)) and possession of a controlled substance (more than 400 grams but less than 900 grams of cocaine) (720 ILCS 570/402(a)(2)(C) (West 2024)). As charged, manufacturing or delivering a controlled substance and possession of a controlled substance are detainable offenses under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2024) ("Upon verified petition by the State, the court shall hold a hearing and may deny a defendant pretrial release only if *** the defendant is charged with a felony offense other than a forcible felony for which, based on the charge or the defendant's criminal history, a sentence of imprisonment, without probation, periodic imprisonment or conditional discharge, is required by law upon conviction, and it is alleged that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"). A person commits manufacture or delivery of a controlled substance if he or she knowingly and unlawfully delivered or possessed with intent to manufacture or deliver 400 grams or more but less than 900 grams of cocaine. 720 ILCS 570/401(a)(2)(C) (West 2024). A person commits possession of a controlled substance if he or she knowingly and unlawfully has in his or her possession 400 grams or more but less than 900 grams of cocaine. 720 ILCS 570/402(a)(2)(C) (West 2024).

¶ 25 Here, the State provided evidence that defendant was seated in the backseat of an SUV when Weston conducted a traffic stop. Upon approaching the vehicle, Weston smelled the odor of cocaine. As officers removed defendant from the vehicle, defendant made a movement towards a bag on the floor. Officers retrieved the bag and found a substance that field-tested positive for cocaine. Prior to finding the bag in the backseat, Weston noticed the driver of the vehicle texting someone to "take it" and "run." Weston presumed that the driver was texting either defendant or

the other occupant in the vehicle. Upon arrest, officers found that defendant had two cellphones and $1,345 in his pocket. The other occupant in the vehicle did not have a cellphone.

¶ 26    On appeal, defendant argues that Weston's proffered testimony was "contrary to human experience and not credible" and thus, the State failed to prove that defendant was aware that there was cocaine in the vehicle to support a finding that defendant committed the offenses charged. Specifically, defendant rejects Weston's statement that the vehicle had an odor of cocaine and that defendant reached for the bag containing cocaine as he was removed from the vehicle.

¶ 27    Regarding Weston's proffer that defendant made a furtive movement, defendant argues that the idea that he would reach for a bag on the floorboard, knowing that it contained cocaine, at the same time that he was being observed by a police officer is "so irrational as to be incredible, and to throw significant doubt on any portion of Weston's testimony that is not independently verifiable." In support of his contention, defendant cites *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 20, for the proposition that eyewitness testimony cannot sustain a conviction where it is improbable, unconvincing, or contrary to human experience. In *Shaw*, the appellate court reversed a conviction that relied solely on the witness's testimony that the defendant had a gun, pressed it into the witness's side, and threatened to shoot the witness. *Id*., ¶ 22. The witness testified to the type, color, and size of the gun. *Id*. However, according to the unimpeached testimony of an officer who frisked the defendant, the defendant in *Shaw* did not have a gun. *Id*. *Shaw* presents a vastly different set of circumstances than the present case, where Weston's proffered testimony states that he observed defendant reach towards a bag and later discovered that bag contained cocaine.

¶ 28    Defendant also cites *People v. Sowers*, 36 Ill. App. 3d 599 (1976), for this same proposition he cites to *Shaw*. In *Sowers*, the witness testified that a masked robber came into the gas station he worked at with a sawed-off shotgun. *Id*. at 600. After the witness gave the robber the contents of

the cash register, the robber then unmasked himself to the witness, whom he knew, negating the purpose of the disguise, and began counting the money in front of the witness. *Id*. The robber stayed for the duration of two transactions, gave money to the witness to make change, and never attempted to flee. *Id*. Finally, after the second transaction, the robber took $60, gave the witness back $140 from the register, and walked away. *Id*. at 601. The witness did not call the police and only reported the robbery when he saw a police car on his way home from the gas station. *Id*. When the witness could not pick out the robber from a lineup, he named the defendant as the robber. *Id*. The police found the defendant at a hotel. *Id*. None of the clothing found at the hotel matched what the witness described, there was no cap that matched what the robber was wearing, the defendant did not have any money, and the police did not find a gun. *Id.* at 602. No evidence that the crime had occurred was found during a two-and-a-half-month investigation. Like *Shaw*, the facts of *Sowers* present a vastly different set of circumstances where there was no evidence to support the testimony of the witness. While the *Sowers* court noted that the testimony regarding the robber's removal of his disguise seemed improbable, that alone was not the sole basis to refute the witness's testimony. *Id*. at 606. Additionally, the facts here do not seem entirely improbable. Defendant could have reached towards the bag as he was exiting for any number of reasons—for example to better conceal it as he exited the vehicle, or if he were considering whether to "take it" and "run."

¶ 29    Defendant also attempts to refute Weston's testimony that there was an odor of cocaine in the car. Even if there was an odor, defendant argues, that does not mean that he himself was aware that it was an odor of cocaine and that there was cocaine in the vehicle. Defendant argues that it is improbable that Weston smelled cocaine, as cocaine is "nearly odorless" in its pure form. M. Siegrist, T.J. Weigand, Encyclopedia of Toxicology 999 (3d 2014) *available at* https://www.sciencedirect.com/topics/chemistry/cocaine-hydrochloride (last visited May 28,

2025). However, defendant notes that street cocaine does have a smell, but each brick smells different due to the agent it is "cut" with, and common processing and cutting agents often have "a sharp, chemical-like smell that can remind people of cleaning products." *Does Cocaine Have a Scent? Breaking Down Different Cocaine Smells*, https://www.renaissancerecovery.com/drug/cocaine/what-does-cocaine-smell-like/ (last visited May 28, 2025). Thus, defendant argues, the smell could have been attributable to cleaning products used in a rental car. Accordingly, he contends that "a reasonable factfinder could not conclude that any passenger in the car with a normal nose would necessarily have had to know that cocaine was in the car." We find these arguments unconvincing. First, Weston could have smelled the cocaine. "While pure cocaine may have little to no scent, what people typically encounter on the street has a harsh, artificial odor due to *** additives." *Id*. There was a large amount of cocaine found in the vehicle, and it is entirely possible that Weston could have smelled "a harsh, artificial odor." Second, even if the alleged scent was attributable to the cleaning products used in a rental car, defendant's action of reaching for the bag as he exited the vehicle casts such a conclusion into doubt.

¶ 30 Finally, defendant argues that the State's proffer did not reasonably establish that the driver of the SUV texted defendant during the traffic stop and that the messages Weston saw advising the recipient to "take it" and "run" were likely to someone else. Thus, he argues, there is little evidence that defendant knew of the cocaine in the vehicle. Weston's proffered testimony did not explicitly state that the messages were sent from the driver of the vehicle to defendant. Rather, out of concern that the messages were sent to defendant or the other occupant in the vehicle, Weston and other officers had everyone step out of the vehicle. It was at this time that Weston saw defendant reach for the bag which contained cocaine. Defendant was then found to have two

cellphones and $1,345 in cash. Accordingly, the text messages alone are not the sole reason to find that defendant had knowledge of the cocaine. Rather, the circumstances as a whole point to such a conclusion.

¶ 31　The quantum of evidence required to detain a defendant pending trial is less than what is required at trial to prove guilt beyond a reasonable doubt. See 725 ILCS 5/110-6.1(f)(2), (f)(4)-(f)(6) (West 2024); *People v. Santiago*, 2024 IL App (2d) 240499-U, ¶ 28. Given the record before us, we conclude that the State proved by clear and convincing evidence that that the proof is evident or the presumption great that defendant committed the charged offenses.

¶ 32　　　　　　　　　　　　　　　III. CONCLUSION

¶ 33　For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 34　Affirmed.